IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-485-KS

SOLOMON CHALLENGER,            )
                               )
        Plaintiff,             )
                               )
    v.                         )
                               )         **ORDER**
                               )
MARTIN O'MALLEY, Commissioner  )
of Social Security Administration, [1] )
                               )
        Defendant.             )

This matter is before the court on the parties' briefs pursuant to the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), the parties having consented to proceed pursuant to 28 U.S.C. § 636(c). Solomon Challenger ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of his application for supplemental security income (SSI). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the parties' briefs, the court affirms the Commissioner's decision.

## STATEMENT OF THE CASE

Plaintiff applied for SSI on January 8, 2021, with an alleged onset date of August 15, 2018. (R. 26, 227–33.) The application was denied initially and upon

---

[1] Martin O'Malley became Commissioner on December 20, 2023, and is therefore substituted as Defendant pursuant to Fed. R. Civ. P. 25(d).

reconsideration, and a request for hearing was filed. (R. 26, 115, 125, 158–59.) A telephonic hearing was held on October 17, 2022, before Administrative Law Judge ("ALJ") Joseph Booth III, who issued an unfavorable ruling on December 21, 2022. (R. 23–70.) On July 7, 2023, the Appeals Council denied Plaintiff's request for review. (R. 1–6.) At that time, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481. On August 30, 2023, Plaintiff initiated this action, seeking judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (citations omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro*

*v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II. Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 416.920(a)(4); *Albright v. Comm'r of SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th. Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id.* In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's residual functional capacity] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). "If the

3

Commissioner meets [this] burden, the ALJ finds the claimant not disabled and denies the application for benefits." *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015).

### III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act ("the Act"). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since January 8, 2021, the application date. (R. 28.) Next, the ALJ determined Plaintiff has the severe impairments of depressive disorder, anxiety disorder, schizophrenic disorder, degenerative joint disease of the left knee, and obesity. (*Id.*)

At step three, the ALJ concluded Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (R. 29.) The ALJ expressly considered Listings 1.18, 12.03, 12.04, and 12.09, and Plaintiff's obesity in connection with SSR 19–2p. (R. 29–31.)

Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff has

> the residual functional capacity to perform light work as defined in 20 CFR 416.67(b) except [Plaintiff] can perform the climbing of stepladders up to 4 vertical feet in height, with no climbing of higher ladders or of ropes or scaffolds of any height. [Plaintiff] can fre [sic] – frequent balancing – occasional stooping, kneeling, crouching, and crawling – occasional exposure to vibration and high, exposed places – exposure up to and including moderate noise – limited to work needing little or no judgment to do simple duties that can be learned on the job or in a short period of time, usually within 30 days, and for which little specific vocational preparation and judgment are needed – limited to work

requiring sustained concentration and frequently performed on an assembly line or at a similar production-pace – occasional changes to the work setting and the manner and method of performing the assigned work – work that frequently provides for two 15-minute breaks and one 30-minute break for each 8-hour shift worked, occurring at such times as directed by the employer – occasional interactions with supervisors, coworkers, and the public when performing the assigned work[.]

(R. 31.) In making this assessment, the ALJ stated that he considered Plaintiff's symptoms and the evidence (both "objective medical" and "other") based on the requirements of 20 C.F.R. § 416.929, and SSR 16–3p, 2017 WL 5180304 (Oct. 25, 2017), and found Plaintiff's statements concerning the intensity, persistence, and limiting effects of Plaintiff's symptoms "not entirely consistent with the medical evidence and other evidence." (R. 31–32.) At step four, the ALJ concluded that Plaintiff is not able to perform any past relevant work. (R. 35.) At step five, the ALJ determined, based upon Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, namely: marker (DOT #209.587-034), router (DOT #222.587-034), and photocopy machine operator (DOT #207.685-014). (R. 36.) The ALJ concluded that Plaintiff has not been disabled under the Act since January 8, 2021, the date of Plaintiff's application. (R. 37.)

## IV. Plaintiff's Argument

Plaintiff contends the ALJ "failed to identify and provide a reasonable explanation resolving the conflict between the testimony of the [Vocational Expert] and the [Dictionary of Occupation Titles] regarding the frequency of changes involved in the jobs cited at Step Five." (Pl.'s Br. [DE #13] at 4–6.) In contrast, the

5

Commissioner contends there is no conflict between the Vocational Expert (VE) testimony and the jobs identified at step five. (Comm'r's Br. [DE #17] at 5–13.) For the reasons explained below, the court agrees with the Commissioner.

In *Pearson v. Colvin*, 810 F.3d 204, 209–10 (4th Cir. 2015), the Fourth Circuit, in addressing the impact of SSR 00–4p, 2000 WL 1898704 (Dec. 4, 2000), held that an ALJ must independently identify and obtain a reasonable explanation from the VE as to any apparent conflicts between the VE's testimony and the DOT before relying on the VE's testimony. *Pearson*, 810 F.3d at 209–10.

Here, Plaintiff argues that the RFC limitation to work involving only "occasional changes to the work setting and the manner and method of performing the assigned work" conflicts with the jobs identified at step five because those jobs all require a reasoning level of 2. (Pl.'s Br. at 4–5.) Plaintiff cites two cases from the District of South Carolina in support. (*Id.* at 5 (first citing *Austin v. Berryhill*, No. 1:17-CV-1797-JMC-SVH, 2018 WL 2392209, at *22 (D.S.C. Apr. 24, 2018); and then citing *Watts v. Berryhill*, No. 1:17-CV-127-RMG-SVH, 2017 WL 4325685, at *12 (D.S.C. Sept. 12, 2017)).)

The Commissioner counters by citing a number of other district court cases and an unpublished Ninth Circuit case. (Comm'r's Br. at 9–12.) Two of these cases—*Padilla v. Saul*, 852 F. App'x 277 (9th Cir. 2021), and *Cromwell v. Colvin*, No. 7:13-CV-186-FL, 2015 WL 103891 (E.D.N.C. Jan. 7, 2015)—the court finds instructive for the reasons explained below.

6

Reasoning level 2 jobs require a person to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and] [d]eal with problems involving a few concrete variables in or from standardized situations." Dictionary of Occupational Titles, App'x C – Components of the Definition Trailer, 1991 WL 688702 (4th ed. rev. 1991). Reasoning level 1 jobs require a person to "[a]pply commonsense understanding to carry out simple one- or two-step instructions [and] [d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Id.* These general definitions of reasoning levels 1 and 2 say nothing about changes in work setting. *See id.*; *see also Cromwell*, 2015 WL 103891, at *6 (noting that there is no apparent inconsistency between a reasoning level 3 job and a limitation to only occasional changes in work setting); *Padilla*, 852 F. App'x at 279 (noting reasoning level 2 "does not speak to whether an 'essential, integral, or expected' part of [performing reasoning level 2 jobs of] an office helper or counter clerk entails changing essential job functions more than occasionally such that there is an apparent conflict (quoting *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016)).[2]

Each of the jobs identified at step five in this case is a reasoning level 2 job. Photocopying-Machine Operator, DICOT 207.685-014, 1991 WL 671745; Marker,

---

[2] Plaintiff argues that reliance on *Cromwell* is misplaced because that decision issued before *Pearson*, when ALJs could simply rely on a VE's statement about any apparent conflicts with the DOT. (Pl.'s Resp. [DE #18] at 2–3.) But that does not impact what the DOT says about changes in the work setting and reasoning levels. Similarly, while Plaintiff correctly notes that *Padilla* involved the Ninth Circuit's different standard for DOT conflicts (Pl.'s Resp. at 3–4), it still focuses its analysis on the descriptions and definitions in the text of the DOT.

7

DICOT 2019.587-034, 1991 WL 671802; Router, DICOT 222.587-038, 1991 WL 672123. These job descriptions say nothing about changes in work setting. *See id.* Accordingly, the court perceives no conflict between the jobs identified at step five and the RFC limitation to only occasional changes in work setting.

Plaintiff argues that the reasoning level 1 limitation to dealing with "standardized situations with occasional or no variables" equates to a limitation to "occasional workplace changes." (Pl.'s Br. at 5.) But Plaintiff never explains this alleged equivalency, other than by referencing the two District of South Carolina cases mentioned above. (Pl.'s Br. at 5.) In the face of the DOT's plain text defining the reasoning levels and describing the jobs identified at step five, the court discerns no apparent conflict. Moreover, the cases upon which Plaintiff relies do not explain this alleged equivalency: *Austin* simply concludes that "the ALJ's specification that Plaintiff could exercise occasional independent judgment skills and deal with occasional workplace changes seems to be most consistent with work at GED reasoning level one," *Austin*, 2018 WL 2392209, at *20, and *Watts* does the same, *Watts*, 2017 WL 4325685, at *12. Indeed, the court in both of those cases couched its finding in notably hesitant language, and each case involved not only a restriction to occasional changes in work setting but also occasional independent judgment skills, thus making it even less clear whether the court was making as robust a determination as Plaintiff contends. Accordingly, the court fails to see any apparent

8

conflict between a limitation to occasional changes in work setting and reasoning level 2 jobs and, therefore, affirms the Commissioner's decision.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is AFFIRMED.

This 18th day of April 2024.

_____
KIMBERLY A. SWANK
United States Magistrate Judge